Good morning. Robert Keefe on behalf of Mr. Johnson, the petitioner. There are two questions this court must answer in resolving this appeal. The first is whether the admission of Dr. Sia's forensic analysis analysis. Sorry. The first is whether all fair minded jurists would agree that the admission of Dr. Sia's forensic analysis report without an opportunity for cross-examination of Dr. Sia violated Mr. Johnson's confrontation rights. The second is whether that violation substantially influenced the jury's decision to convict Mr. Johnson. The answer to the first question is yes. Clearly established federal law. That really depends on whether this information was testimonial or not, right? That's right. And the Supreme Court tells us that you objectively look at the facts and circumstances to determine that. Yeah. I mean, I look at this and this report contains all kinds of information about whether condoms were involved and penetration, possible ejaculation, which all of which would be relevant to the risk of a sexually transmitted disease. A drawing of the injuries to the victim, a description of the findings of the pelvic exam, all of which would be relevant to monitoring progress in healing, listed treatment actions already taken. This strikes me as one where, at least plausibly, the report was primarily for treatment and diagnosis. And if a reasonable jurist could so say, then we have to defer to the state habeas decision. Your Honor, I would agree with you if the facts and circumstances supported a determination that a fair-minded jurist could find. The primary purpose was for medical treatment, but that is not the case here. Why? Why doesn't the presence of all this information I just mentioned allow a jurist to conclude that that's the primary purpose? Not that that's what I would think, but a state court could think that. So look at this from Dr. Sia's perspective objectively. The police bring CA to him because she has reported being raped. The purpose of police bringing CA to him is to collect, as the record says, is to collect evidence and prepare a report for police. Dr. Sia, during his examination, yes, there are perhaps secondary purposes of making sure there's not some sort of acute injury that needs to be done. I mean, there's statutory requirements about hospitals having to keep these kinds of medical records, right? That's absolutely correct, but if a rape treatment center... I mean, it seems to me that if we say, given the presence of all that, that this is testimonial, then basically any time the police bring a victim of crime to a doctor, then we're going to have the primary purpose being law enforcement, not medical treatment. In this specific examination, based on what's in the report, Dr. Sia asked what happened. Did he use weapons? Did he make threats? He recorded the injuries he observed and the pain. But under Davis v. Washington and other cases, wouldn't the appropriate thing to do there be... Let's suppose that those statements are testimonial. Wouldn't the appropriate thing be to exclude those statements rather than the entire document? That's correct, but that's not what happened here. The entire document was admitted. Sure, but don't we then have to, once we get to potentially a harmlessness analysis, wouldn't we have to say, well, these few statements didn't make a difference ultimately in the case given the overwhelming amount of evidence against your client? I realize I'm jumping a few steps, but... How this was used at trial is, it was not about whether or not prophylaxis was administered or whether or not there was an STD. It was, one, I took these specimens from this location on CA's body and gave them to police. Without the opportunity to cross-exam Dr. Sia about, is there a chance that you mislabeled them? Is there a chance you didn't wash your hands after the last examination? All of those things that are fodder for cross-examination, Mr. Johnson was deprived of doing. Why couldn't those same questions have been asked to the nurse? And if she didn't remember, she didn't remember, but then you use those. Why is that testimonial necessarily? That would be the surrogate witness testimony that Bullcoming clearly establishes. No, in Bullcoming, the person wasn't involved in the testing at all. That's correct, but Nurse Carter testified, I had nothing to do, I just handed Dr. Sia the tools, I had nothing to do with actual making medical diagnoses or observations, and I had nothing to do with what he wrote in his report. Right, but would we have to assume, would the jury have to assume that she handed in the tools and then turned and faced the wall so that she wouldn't know if he was, you know, pulling out some secret swabs from his coat or something? I mean, that seems pretty fantastical. The record is that Dr. Sia prepared his report, after the examination was over, prepared his report separate from where Nurse Carter was. Nurse Carter did not look over Dr. Sia's shoulders as he wrote his report, nor is the record that she was present when he put the samples in the brown bag that he handed to Detective Signore immediately after the examination. But isn't the testimony in Bullcoming more similar to that of the physician who did the testing later, who actually tested for the DNA, as opposed to the person who took the swabs? That's right, so the harm here is not whether or not the reliability of Sharon Hines' DNA match, it's the location of the, where, from where did this specimen come that you matched to Johnson's DNA? That's the harm. There was no ability to cross-examine Dr. Sia. You can't cross-examine the report. And the forensic, the Supreme Court has reiterated over and over again in Bullcoming and Melendez-Diaz that forensic evidence is not immune from error, from untruth, from doctors or forensic analysts who may have some reason to be biased. No, of course not, but do you think it's completely irrelevant that the nurse was involved in this case? No, for purposes of chain of custody and authenticity, but again in footnote one of Melendez-Diaz and again in Bullcoming, it's not that the prosecution was required to have evidence of every step in the chain of custody, it's that when, as here, the prosecution decides that a certain step is so crucial as to require evidence, that evidence has to be introduced live and subject to cross-examination. But be really specific about what evidence you're talking about. The particular part of the report, what is it that you're saying there was no opportunity to get testimony on? That the injuries, the fresh tears and blood that Dr. Sia wrote he observed during his examination, the specific locations and number of swabs he collected from Sia, and the fact that those same swabs that he documented in his report were the ones put in the brown paper bag and appropriately labeled as corresponding with the correct source, and then also what Sia told him about what had happened to her, which was used at trial as powerful, a near contemporaneous record that the prosecution pointed to about being made just hours after, again in a trial that occurred 11 years later. So what if there's a breathalyzer test on the side of the road, and one officer performs the test, and another officer is kind of standing around and later signs a document affirming that it happened, and then a lab separately kind of provides the results, right? Or maybe it's, I guess, it's a two-step process, right? Do you think that under that hypo, would the officer who did the test have to come, or could the officer who witnessed the test being performed, the sample being taken, could that officer be enough to say this sample was taken, and then the actual analysis is testified to by the person who did it later? I'll do my best to answer that. I realize a breathalyzer probably is sampled at the time. Let's say it's a DNA swab at the scene of a crime, right? You swab the defendant for whatever reason, and they give you permission. Is the officer who witnesses the swabbing not enough? It would certainly be enough to admit as a hearsay exception, for example, or a business record or a testing record, but if the state as here decided that the other officer, for whatever reason, the evidence that he could fill in the chain of custody was so important, it was so crucial to that prosecution, they didn't want any ability for the defendant to be able to assail reliability or weight of the evidence, that they just put in his written statement from the time without calling him and being subject. But remember, what I'm talking about is the report from the side of the road. Both the officer who performed the swab signed it, and then the second officer who was standing there and witnessed it signed it, right? Why wouldn't the second officer be enough? To admit it, he would be enough to admit it, but you couldn't. It would not be enough to whatever statement the other officer wrote, which I assume here would be that I performed this test. Right, and I used two swabs, one in the left cheek and one in the right cheek of the defendant. Again, I don't think that could be admitted without cross-examination. Okay, why? Because that would be used at trial as a testimonial statement against the defendant in the case. Because of chain of custody, which goes to weight, not admissibility? But that's the, I think, my reading of footnote one in Melendez-Diaz is if the state decides for whatever reason that they need that, they need that to establish chain of custody, you have to introduce it live. You may be able to get it in without that, but when you decide to introduce it into evidence, you can't do it without depriving the defendant of the opportunity to cross-examine it, cross-examine that person. And let me lastly say that I understand and appreciate that the Confrontation Clause's requirements may make it more difficult to investigate and prosecute cold case investigations like this one. But as Justice Scalia recognized in Melendez-Diaz, the same is true of the right for trial by jury and the privilege against self-incrimination. And so whatever hindrance the Confrontation Clause may cause prosecutions like this one, it may not be disregarded at the prosecutor's convenience. And it was disregarded at the prosecutor's convenience in this case. The court should grant Mr. Johnson's petition. Thank you. Okay, Mr. Keefe, thank you. You have three minutes for rebuttal. Mr. Lynch. Good morning, Your Honors. May it please the Court, Myles Lynch on behalf of respondents. As I see it, this is a simple case that's been made complicated. Even if there were a Confrontation Clause violation, even if that violation had been clearly established beyond the possibility for fair-minded disagreement, the petitioner's only theory of harm, at least up until his reply brief, is that there was a gap in the chain of custody. But even if we were to say that Dr. Steele's report was taken out of the equation, we have testimony from CA saying that she was in a room with just her, the doctor, and the nurse, and she left the room and she waited while the doctor took whatever they were doing to the detective. We have the testimony from Nurse Carter, who signed and certified that she was a witness to this procedure. We have the detective. We have the detective who said he watched her go in with those two, come out with those two, take it. And we have Sharon Hinn saying it was a sealed, untampered with sample that she built the DNA profile from and then matched to Johnson. And so there's no way that Johnson can show actual prejudice here to satisfy the Brexiteers. In the disputed trial, it's about whether the defendant was the rapist, not whether a rape had occurred. Correct, yes. But prejudice aside, there was no confrontation clause violation here because the report was not testimonial. Fair-minded jurists and the jury as well all could have agreed that the primary purpose of Dr. Steele, a doctor, or the primary purpose in drafting this report was to help CA to record his ongoings for both legal and hospital procedure reasons. It wouldn't have been the jury's determination, would it? I mean, the determination of whether this is hearsay, whether this is testimony, all of that would have been for the court, right? Yeah, that is correct. I still have prejudice in my head, sorry. That's okay. I'm sorry, go ahead. Go ahead. Isn't it harder to say that the primary purpose was medical when there are specific check marks were given to police or not for each of the specimens? So as the Fifth and Seventh Circuit have recognized, specifically, I think, this is a quote from one, the sexual assault nurse examiners can sometimes have multiple purposes, but as a doctor, as a medical professional, their primary responsibility ethically, legally, and their job description is to treat the patient. So it doesn't matter that Dr. Steele was aware that the police would be involved at a later junction. In the same way that Michigan D. Bryant, being aware that you're talking to the police isn't necessarily dispositive there either. So we have here a report that's being filled out by a doctor in a hospital without the detective in the room. Are the samples, the DNA samples, really, can you really see those as related to a medical purpose or, you know, say the pubic hair scrapings? Is there really any medical reason to take those steps? Yes, Your Honor. We have testimony from Dr. Simmons saying that some of the specimens taken had no forensic value and that they were purely used for STD screening. I'm thinking specifically of the saliva specimens, which he said on page 969 of the appendix, that those are only useful for gonorrhea purposes, testing for gonorrhea. And I think it's, well, the pubic hair comings, I don't have an answer for that one. Sharon Hins testified that she tested four things. Of course, it could have a forensic purpose, couldn't it, if the defendant had gonorrhea? Yes, but as far as the medical reasons, the chain of custody contains four things that were tested. Cervical swabs, the pap smear, the vaginal swabs, and the vaginal smear. And those four things match up to the tests that were run in the upper left-hand corner of the report. So while, yes, the presence of semen in the, I think it's the vaginal swab that she said she'd match semen from would help the police, it also helps with STD screening and other health reasons as well. Do you see this as, it sounds like you're saying right now it's more of a medical record. Is there also a possibility that even if these items were taken for forensic purposes, it's a business record so that these doctors can show that they did what they're kind of required to do for a rape screening? So I do think that, like Ruan, there's a kind of blur in the line between medical records and business records because the entity's affairs is treating patients. I don't think if the, so if the hospital was required, like in Melendez-Diaz, Bullcoming, and Ignaciak, to work with and create reports specifically for the police that only go to the police and have no other purpose, the business record exception, per Melendez-Diaz, wouldn't help us. But like in Sterling and Rainbow and in Ruan, the requirement to fill these reports out is for the administration of the entity's affairs and for the patient's benefit. So a secondary purpose of helping the police or even a secondary, like subsidiary requirement that you cooperate to some extent with the police would not save, or would not save this case for the petitioner. And so beyond the medical reports and business records that we've been discussing, I do think as well that fair-minded jurists, given the state of the law, could also have agreed that this was a statement made for the purpose, as was said in Williams, to catch a dangerous rapist that was on the loose. And I understand that Melendez-Diaz and the Garlick case that petitioner cites suggest that there is no difference between targeting a specific person for crime and saving the public health, public safety from being on the loose. But multiple state courts, after the fact, including one cited by Garlick, have disagreed, saying that the state of the law post-Williams is that for something to be testimonial needs to be targeting a particular defendant. The purpose of investigating that crime, not just to stop a dangerous criminal that's on the loose. I've got one. Under, can you argue that this case is different from Bullcoming because the nurse was actually there and didn't perform any of the kind of medical procedures? But doesn't that differentiate this case from Bullcoming in a significant way? Yeah. So Bullcoming said that a certifier, or at least suggested because this was not the case there, but that a certifier who was present could testify to the care taken to make sure the procedures were followed, et cetera. And Bullcoming also said in footnote seven that it didn't matter if a witness didn't remember as long as they were able to be cross-examined for their truthfulness and the care that's typically taken in these things as well. But I think, yes, Judge Grant, that is a- All of which goes to prejudice, right? Correct, yes. Okay. Thank you, Mr. Lynch. I don't hear any further questions. Mr. Cave, you saved three minutes. The question is whether the report's primary purpose was testimonial. Here the evidentiary purpose is printed on the form, evidential specimens. What is the police department? What is the case number? Were these given to police? Were these a confirmation that they were a receipt of evidence and the police officer's signature? So objectively looking at just the form itself, this is intended to be given to police to assist in a criminal prosecution. I tend to agree with you, but to Chief Judge Pryor's earlier point, couldn't a reasonable jurist make a different conclusion? Even assuming just based on what the form looks like, think about the circumstances. The detective, it's not whether this may in the future, as in Ruan, maybe there's a chance the stuff we enter on this- But the problem is there's more than one purpose here. The question is whether it's the primary purpose. Correct. And even if I were to agree with you that the primary purpose is law enforcement, the thing you have to establish is that no reasonable jurist could find otherwise. So if a reasonable jurist could conclude that this is primarily for the medical purpose, you lose, right? Right. But no reasonable jurist could look at, did the person force you to an area? Did the person hold a gun to your neck? What medical treatment purpose is served by asking those questions and recording those answers? And the answer is there isn't one. It is to record the evidence of this criminal activity to assist- No question that there are things in here that you could look at that in that way, the question. But I took you through the catalog of other things that are in there as well. And so it's a judgment call what the primary purpose was, right? No, I think you have to look objectively. And looking objectively, while there may be certain- prophylaxis administered and tested for an STD, not testimonial, but the whole form, I gave these to the police. There's no reasonable jurist could look at that and conclude objectively that the purpose was anything but use at a later prosecution. Well, the name on the top of the form says Rape Treatment Center, Jackson Memorial Hospital, University of Miami School of Medicine. It doesn't say Rape Evidence Center, right? Correct. So to the extent that we look at all the things on the form, isn't the fact that the center is named the Rape Treatment Center indicative of a treatment purpose? But the testimony at trial from both Detective Signore and Dr. Simmons was- Detective Signore says, we bring them there so that they can write reports and collect evidence for us. And Dr. Simmons testified, we do things if it's within 72 hours because we know we can get forensic samples that will be useful for police because after that time, they may be degraded. So yes, the name of the center is the Rape Treatment Center, but objectively, everyone, I guess that would be subjectively, but looking at the form and then also what the record was in front of the state court making this, the purpose, the entire purpose was for Dr. Sia to do these things for Detective Signore. And then as to prejudice- I'm sorry, red light, not the green light. Thank you. Thank you, Mr. Cave. So we're going to move to the last case.